UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **EDWARD WISNER DONATION** | * | **CIVIL ACTION NO. 14-1525** |
|     Plaintiff, | * | |
| | * | **SECTION "J" (2)** |
| versus | * | |
| | * | |
| **BP EXPLORATION & PRODUCTION INC.**, | * | **MAGISTRATE JUDGE JOSEPH C. WILKINSON, JR.** |
|     Defendant. | * | |
| | * | |

**BP EXPLORATION & PRODUCTION INC.'S MEMORANDUM
IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**

MAY IT PLEASE THE COURT:

    Defendant BP Exploration & Production Inc. ("BP") opposes Plaintiffs' Motion to Compel filed July 21, 2015 (Rec. Doc. 66). Plaintiffs complain about BP's interrogatory responses; but the responses identified by Plaintiffs have been fully answered in BP's initial responses or in supplemental responses being provided today.  Plaintiffs also complain that BP has not completed its document production; yet, BP has already produced over 183,100 pages of documents and is working diligently to complete its production.  Finally, Plaintiffs seek an order compelling BP to produce more than 19 witnesses for depositions without any attempt to satisfy Plaintiffs' burden, under Rules 26(b)(1) and 30(a)(2)(A)(i), of establishing good cause to take more than 10 depositions.  Plaintiffs' motion should be denied in full.

## BACKGROUND

    The basic facts and the legal issues presented by this case are familiar to the Court.[1] This is a contract action. Although (as this Court had held) the facts and sources of law that

---

[1] *See* 9/5/2014 Report and Recommendation (MDL 2179 Rec. Doc. 13366) (adopted by 9/22/2014 Order (MDL 2179 Rec. Doc. 13425)) (hereinafter the "2014 Order").

govern this case are separate from those involved in other litigation,[2] the contract involved here arises from BP's efforts, as a Responsible Party for the *Deepwater Horizon* oil spill, to contain and remove oil from the Louisiana coast and adjacent waters, under the direction of the Federal On-Scene Coordinator (the "FOSC") in charge of the oil spill response. That contract, the so-called "Access Agreement," granted BP entry on the property owned or managed by the Edward Wisner Donation in Lafourche Parish ("the Property" or "the Wisner Property"), in order to contain oil from the *Deepwater Horizon* and to clean it up. The Access Agreement obliged BP to pay the Wisner Donation's reasonable expenses to monitor its work on the Property, to provide records relating to the cleanup operations, and "to pay for damages caused by BP during its cleanup operations."[3] In May 2014, the FOSC determined that "no further removal activities" were appropriate on the property owned or managed, the lead plaintiff in this action.

The current discovery dispute arises primarily from (i) Plaintiffs' attempt to use Rule 33 and Rule 34 discovery in this contract action in order to take discovery in their separate litigation under OPA and related laws; (ii) Plaintiffs' dissatisfaction with the pace of document production in this action; and (iii) Plaintiffs' insistence that they need more than 19 fact depositions to prepare for trial here. BP addresses the third issue, regarding deposition discovery, in its Motion for a Protective Order (like this Motion to Compel, scheduled for hearing on August 5), and in an accompanying Declaration.[4] Below, BP addresses the Interrogatories and Requests for Production of Documents that Plaintiffs specifically identify in their Motion to Compel.

---

[2] *See* 2014 Order at 8–9; *see also* 4/20/2013 Wisner OPA Compl. (Case No. 2:13-cv-01971-CJB-SS (Rec. Doc. 1)).

[3] 2014 Order at 18–19.

[4] *See* 7/28/2015 Esbrook Decl. ("Esbrook Decl.") (App. 001–023) ¶ 8.

**ARGUMENT**

I.  **BP HAS PROVIDED DISCOVERY CONCERNING THE DRAFTING, INTENT, AND CANCELLATION OF THE ACCESS AGREEMENT.**

    A.  **BP Provided Substantive Responses to Interrogatories 14, 15, & 16.**

After the FOSC determined in May 2014 that no further removal activities were appropriate at the Wisner Property, BP no longer needed access to the Property for cleanup operations. BP informed the Wisner Donation in a letter to its counsel that BP would "cease entering the Property" and would incur no further obligations under the Access Agreement. In the same letter BP requested any remaining requests for reimbursement of expenses governed by the Access Agreement, along with any outstanding requests for information owed to the Donation under the Agreement and notice of any claims for indemnification.[5]

In September 2014, the Court held that termination of the Access Agreement, based on the plain language of the Agreement and fundamental principles of contract law, "could not be a breach of the contract."[6] Nevertheless, Plaintiffs served an Interrogatory (No. 14) that requested that BP "[i]dentify any and all persons who decided to cancel the Access Agreement." In addition to objecting to that Interrogatory, BP responded that "Mr. Nathan Block acted on its behalf to terminate the Access Agreement, and did so properly under Louisiana law for the reasons stated in BPXP's May 22, 2014 letter to Plaintiffs." (Rec. Doc. 66-4 at 15.) Thus BP has responded to Interrogatory 14 despite (and without waiving) its grounds for objection.

The same is true for Interrogatory 15, which requested that BP "[i]dentify any and all reasons for canceling the Access Agreement." Despite and without waiving its grounds for

---

[5] *See* 5/22/2014 Letter from N. Block to S. Gisleson (App. 024–025).

[6] 2014 Order at 9. Plaintiffs claim in their Memorandum that the Court may have modified the 2014 Order concerning the meaning of the Access Agreement in a subsequent conference call with the parties. (*See* Rec. Doc. 66-1 at 3, n.1.) That supposed change in the Court's position was not mentioned by Plaintiffs in any of the discovery conferences with BP over the last two months and counsel for BP recalls no such change.

objection, BP responded that "it terminated the Access Agreement because, as a result of the determination by the FOSC that no further removal activities were appropriate on the property, no additional removal actions were authorized and GCIMT authorized activity ceased. BPXP further states that it properly terminated the Access Agreement under Louisiana law for the reasons stated in its May 22, 2014 letter to Plaintiffs." (Rec. Doc. 66-4 at 15–16.)

Interrogatory 16 asked BP to "[i]dentify who drafted, edited, and/or approved the Access Agreement on Your behalf." After stating valid objections and without waiving those objections, BP responded that:

> [T]he Access Agreement is a form contract used by the Edward Wisner Donation. The Edward Wisner Donation or representatives of the Donation drafted and edited the Access Agreement. Mr. Farley Barge discussed the Access Agreement with Cathy Norman, an agent of the Donation. Brad J. Byczynski signed/approved the Access Agreement on behalf of BPXP. Nathan Block and Jake Rodriguez prepared the First Amendment to the Access Agreement on behalf of BPXP. Carla Fontenot, BP Incident Commander, approved and Nathan Block executed the First Amendment to the Access Agreement on behalf of BPXP.

(Rec. Doc. 66-4 at 16–17.) Thus, without agreeing that Interrogatories 14, 15 and 16 are "relevant," BP has responded to them.

## B.   Request for Production 31 Is Outside the Scope of this Dispute, But BP Has Provided a Substantive Response.

Request for Production 31 requests that BP "[p]roduce any and all documents relating to Your cancellation of the Access Agreement." (Rec. Doc. 66-4 at 53.) As explained above, the Court has determined that the termination of the Access Agreement was not a breach of the Agreement; nevertheless, BP has identified an individual who is familiar with the drafting, revision, approval and termination of the Access Agreement (Mr. Block), and has produced the two non-privileged documents responsive to the document request that it could locate in a reasonable search for such documents. Unless they seek to re-argue the proper interpretation of

4

the Access Agreement and BP's right to terminate the Agreement, BP does not understand why Plaintiffs seek more.

## II.   BP HAS PRODUCED OVER 183,100 PAGES OF DOCUMENTS.

Plaintiffs ask that "BP … be ordered to produce all responsive documents no later than August 10, 2015." (*See* Rec. Doc. 66-1 at 4.)  As averred in the accompanying Declaration, BP has already produced approximately 110,000 pages of records concerning the oil spill response at the Property pursuant to the Access Agreement starting in 2011, and has recently produced over 73,100 additional pages to Plaintiffs.  BP plans to complete most if not all of the supplemental document production by August 10, 2015.

Among their 32 document requests, Plaintiffs specify five responses to those 32 requests (RFPs 11, 12, 13, 15, and 31) in their Motion to Compel that they consider deficient.  BP addresses those five specific requests and responses here. If Plaintiffs are demanding "all responsive documents" (Rec. Doc. 66-1 at 4) in addition to those specifically addressed in their Motion, their demand is unreasonable on its face.  BP has cooperated in good faith in discussing all of Plaintiffs' document requests and guidelines for document production.[7]  BP cannot be expected to respond to, nor can the Court rule upon, a generalized demand that BP produce "all responsive documents" without any explanation by Plaintiffs of any specific deficiencies in BP's stated objections.

## III.   PLAINTIFFS FAIL TO ESTABLISH GOOD CAUSE FOR 19 FACT DEPOSITIONS.

As explained above and in BP's Motion for a Protective Order, Plaintiffs have failed to follow Rule 30 by seeking leave to take the 19 fact depositions that they are seeking. Plaintiffs

---

[7] In addition to presenting those objections in its Rule 34 responses, BP addressed specific questions about 14 of its responses in a meet-and-confer session on June 4, 2015 and by letter on June 16, 2015. (*See* Esbrook Decl. ¶ 6 and *id.* Ex. B.) If Plaintiffs were dissatisfied with BP's position on those 14 responses, they could and should have moved long ago with respect to those 14 responses.

learned from BP on July 1, 2015, three days after presenting their list of 19 deponents, that BP objected to their request, having learned more than three weeks ago that BP would not stipulate to those 19 depositions, which Plaintiffs did not request until June 28.[8] Plaintiffs' assertion that BP would not agree to just "one" deposition is inaccurate. (Rec. Doc. 66 at 5.) When BP asked Plaintiffs to identify their top two or three proposed fact deponents in a discovery conference on July 17, 2015, Plaintiffs could not or would not comply.[9] In other words, BP did not refuse even "one" deposition, but reasonably assumed that Wisner's counsel would advise which of his 19 witnesses should be scheduled first. To the extent that Plaintiffs believe they now lack a "fair opportunity" for their experts to "finalize[]" the reports due in September (Rec. Doc. 66-1 at 5), this is a product of their own failure to follow Rule 30, and their inflexibility during and after the July 17 discovery conference. BP remains willing to discuss depositions further with Plaintiffs prior to August 5.

## IV. BP HAS PROVIDED DISCOVERY RELATED TO ITS ANSWER AND DEFENSES.

Plaintiffs claim that BP "refused to respond to these interrogatories and requests for production based on relevance, scope, and/or vagueness" concerning its defenses. (Rec. Doc. 66-1 at 6.) To the contrary, in addition to stating objections, BP also provided substantive responses when it was possible to do so. Most of Plaintiffs' specific objections to BP's discovery responses pertain to Interrogatories that simply restate various affirmative defenses that BP pleaded in its Answer, out of an abundance of caution and pending the receipt of specific information about the facts that support Plaintiffs' claims for damages. The relevant requests and responses are set forth and addressed below.

---

[8] *See* Esbrook Decl. ¶ 8; *see also id.* Ex. D.

[9] *Id.* ¶ 10.

### A. Oil in the Marsh

Interrogatory 2[10] requested that BP "[i]dentify all procedures used by You or any of your experts, employees, agents, contractors and sub-contractors in order to determine that 'no oil entered the mangrove and saltwater marsh behind the beach crest' of the Property as stated in Your answer to ¶ 6 of the Complaint." Subject to and without waiving its specific and general objections, BP has supplemented its response to Interrogatory 2, stating that:

> In response to Plaintiffs' allegation, in Paragraph 6 of the Complaint, that oil allegedly entered the mangrove and saltwater marshes "from waves associated with Tropical Storms Alex and Bonnie in July 2010," BP denied that oil entered the mangrove and saltwater marsh based upon procedures approved by the Unified Command including, *inter alia*, observations and photographs taken during over-flights, SCAT reports, and Shoreline Cleanup Completion Plans. Response personnel also accompanied Cathy Norman to a location where she believed there was oil, but no oil was found.

(7/28/2015 Supp. Resps. to Pls.' First Set of Interrogs. and Req. for Prod. at 1–2 (App. 026–027).)

Request for Production 15 requested that BP "[p]roduce any and all documents relating to Your statement that "no oil entered the mangrove and saltwater marsh behind the beach crest" of the Property as stated in Your answer to ¶ 6 of the Complaint." BP maintains its position that the 2014 Order makes discovery on the issue of oil in the marshland improper in this action. Pursuant to the Access Agreement, Plaintiffs obtained access to extensive data on the oiling that occurred on the Property as a result of the *Deepwater Horizon* oil spill.[11] No more is reasonably required to prepare for trial on the limited issues presented in this action, in which the Court has ruled that "[t]he facts and legal sources regarding BP's performance of its contractual obligations

---

[10] The Motion to Compel specifies "Interrogatory 3" (Rec. Doc. 66-1 at 6), but from context that appears to be an error and that Plaintiffs intended to refer to Interrogatory 2.

[11] Access Agreement (Rec. Doc. 66-5) §§ 2, 5–6; *see also* Esbrook Decl. ¶¶ 3–4.

7

to Wisner are separate from those regarding BP's obligations under federal statutes and other laws that determine responsibility for the spill and its direct effects." (2014 Order at 8–9, 19.)

### B. Obstruction of Response Activities and Wisner's Contribution to Plaintiffs' Injuries

Interrogatory 4 directed that BP "[i]dentify any and all operations that Plaintiffs prohibited you and/or any other entity from performing on their Property." BP responded that:

> [T]he Wisner Donation prohibited the use of heavy equipment for bulk oil removal. These restrictions impeded the progression of removal actions and allowed oil to remain in the environment, subject to dynamic coastal forces, longer than otherwise necessary. The Wisner Donation also allowed access to the property for the placement of non-engineered barricades and breach closure structures. These were not reviewed or approved by the Gulf Coast Incident Management Team ("GCIMT") or the FOSC as necessary and appropriate removal actions. The barricades contributed to the stranding of oil and the rapid accumulation of sand being deposited in front of them.
>
> Additionally, based on information and belief, BPXP asserts that Wisner Donation representatives prohibited shallow/near surface tilling as a response option on the Property, despite its successful use elsewhere, including on the immediately adjacent beach at Elmer's Isle. Had tilling been allowed, any areas of the Property that warranted remediation under the Shoreline Cleanup Completion Plan ("SCCP") might have met cleanup standards sooner and avoided otherwise unnecessary additional work on the property.

(Rec. Doc. 66-4 at 4–6.) Other than their citation of Interrogatory 4 in a scattershot listing of BP's responses to their contention interrogatories (Rec. Doc. 66-1 at 6), Plaintiffs offer no reason why BP's good-faith effort to respond to Interrogatory 4 is insufficient.

Interrogatory 10 directed that BP "[i]dentify every act of Plaintiff, including its agents, representatives and consultants that caused or contributed to Plaintiffs' alleged damages and injuries." BP responded that:

> [T]he Wisner Donation allowed the access to the Property for the purpose of constructing an approximately 3.2 mile line of HESCO baskets along the front of the beach between Breaches 4 and 5. This required bulldozing a large swath of sand along the beach to accommodate placement of the baskets, and the use of heavy equipment on the west end of the beach. The Donation also allowed access to the shoreline for the installation of the five hard structures discussed in the

> response to Interrogatory no. 4. Those structures were installed by Lafourche Parish, in coordination with the Louisiana National Guard. Lafourche Parish was the applicant for a permit from the U.S. Army Corp of Engineers for the installation and it exercised dominion over the structures and control over the timing of when they were removed.
>
> Further, and without sufficient technical justification, the Wisner Science Team took several vibracores along the beach face, entering the relic clay up to 24 inches and damaged the marsh platform, in addition to installing numerous piezometers and similar devices into the beach and back beach areas.

(Rec. Doc. 66-4 at 4–6.) As with Interrogatory 4, BP has identified the facts and events currently known to it that are responsive to Interrogatory 10.

### C. Failure to Exhaust Administrative Remedies

Interrogatory 9 asked BP to "Identify every administrative action you allege Plaintiffs failed to exhaust." While BP believes its objections were proper and constituted a sufficient response, BP has today supplemented its response, stating that:

> Upon information and belief, Plaintiffs failed to request reconsideration of FOSC determinations regarding the Wisner Property, including, *inter alia,* FOSC's determination that no further removal activities were appropriate on the Wisner Property by letter dated May 21, 2014 (Rec. Doc. 44-4.) Upon information and belief, Plaintiff may also not have availed themselves of the remedies specified in the FOSC's letter, regarding Wisner's ability, if necessary, to submit additional "reports of oiling" that would be addressed.

(7/28/2015 Supp. Resps. to Pls.' First Set of Interrogs. and Reqs. for Prod. at 2 (App. 027).)

### D. Other Sources of Injury; Indemnity and Subrogation; Offset; and Release of Claims

The balance of the discovery requests for which Plaintiffs seek further responses relate to other Affirmative Defenses that BP pled in good faith and out of an abundance of caution. As BP indicated in its objections to the relevant discovery requests (Interrogatories 11, 12 and 13, and RFPs 11, 12 and 13), it is not possible for BP to provide further responses until Plaintiffs provide specific information about the damages that they claim. For example, BP may be entitled to indemnity under any number of vendor contracts with response contractors who may

have contributed to response operations on Wisner's Property. Subject to its objections, BP has agreed to produce documents responsive to these document requests. (Rec. Doc. 66-4 at 32–33 (Responses to RFPs 11 & 12); 7/28/2015 Supp. Resps. to Pls.' First Set of Interrogs. and Reqs. for Prod. at 4 (App. 029) (Supp. Response to RFP 13).) BP has supplemented its responses to Interrogatories 11 and 12. (7/28/2015 Supp. Resps. to Pls.' First Set of Interrogs. and Reqs. for Prod. at 2–4 (App. 027–029).) Until Plaintiffs identify particular items of alleged damage, BP cannot do more than list contracting parties.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Compel should be denied.

Dated: July 28, 2015                            Respectfully Submitted,


                                                /s/ Christopher J. Esbrook
                                                Christopher J. Esbrook
                                                KIRKLAND & ELLIS LLP
                                                300 North LaSalle Street
                                                Chicago, IL 60654
                                                Telephone: (312) 862-2000
                                                Facsimile: (312) 862-2200

                                                Shannon S. Holtzman (Bar #19933)
                                                Greg L. Johnson (Bar #24477)
                                                Tyler D. Trew (Bar #34125)
                                                LISKOW & LEWIS
                                                701 Poydras Street, Suite 5000
                                                New Orleans, LA 70139-5099
                                                Telephone: (504) 581-7979
                                                Facsimile: (504) 556-4108

                                                *Attorneys for BP Exploration & Production Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing to all counsel of record, and a copy will be furnished via e-mail to Plaintiffs' counsel.

/s/ Christopher J. Esbrook