## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **EDWARD WISNER DONATION** | * | **CIVIL ACTION NO. 14-1525** |
| **Plaintiff,** | * | |
| | * | **SECTION "J" (2)** |
| **versus** | * | |
| | * | |
| **BP EXPLORATION & PRODUCTION** | * | **MAGISTRATE JUDGE JOSEPH C.** |
| **INC.,** | * | **WILKINSON, JR.** |
| **Defendant.** | * | |
| | * | |
| | * | |
| | * | |

## BP EXPLORATION & PRODUCTION INC.'S
## <u>REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ........................................................................................................ 1

LEGAL STANDARD ............................................................................................... 1

ARGUMENT ............................................................................................................. 2

I.  BPXP IS ENTITLED TO SUMMARY JUDGMENT ON WISNER'S BREACH OF CONTRACT CLAIMS THAT ARE UNSUPPORTED BY THE PLAIN TERMS OF THE ACCESS AGREEMENT. .......................................... 2

     A.  Wisner Concedes That BPXP's Termination Of The Access Agreement Was Not A Breach.  (Compl. ¶ 35a) ...................................... 3

     B.  Wisner Concedes That The Access Agreement Did Not Require BPXP To Assess Oil And Presents No Evidence That BPXP Failed To Pay Reasonable Costs Associated With Assessment Of Cleanup Operations. (Compl. ¶ 35b) ...................................... 3

     C.  Wisner Concedes That It Was Not Entitled To Direct BPXP's Cleanup Operations.  (Compl. ¶ 35e, f, g) ...................................... 4

     D.  Wisner Concedes That No Provision Of The Access Agreement Required BPXP To Enable Wisner To Assess Its Property.  (Compl. ¶ 35d) ...................................... 4

II.  BPXP IS ENTITLED TO SUMMARY JUDGMENT ON WISNER'S "HIGHEST INDUSTRY STANDARDS" CLAIMS. .......................................... 5

     A.  Wisner Fails To Save Its Erosion Claim. .......................................... 5

          1.  Wisner Provides No Evidence Cleanup Operations Caused Erosion. .......................................... 5

          2.  The Undisputed Facts Show BPXP Did Not Delay the CAM Project. .......................................... 6

          3.  Wisner Cannot Demonstrate an Enforceable Right to the CAM Project. .......................................... 8

          4.  Wisner Concedes that the Access Agreement Did Not Require BPXP to Remediate Oil According to Any Agreed Timeframe. .......................................... 8

     B.  Wisner Has No Recoverable Damage Related To The Removal of Oiled Sand. .......................................... 8

i

C.      Wisner's Claimed Marsh Platform Damages Cannot Survive Summary Judgment. ................................................................................................ 10

D.      Wisner Fails To Raise Genuine Issues Of Material Fact Concerning Liability For Hard Structures Or HESCO Baskets. ............................................ 11

      1.      BPXP Was Not Involved in the Installation of the Hard Structures or HESCO Baskets.................................................................................. 11

      2.      Wisner Presents No Evidence of Damages Due to Removal of the HESCO Baskets. ....................................................................................... 12

**III.**    **THERE IS NO EVIDENCE OF DAMAGES STEMMING FROM ANY FAILURE TO PROVIDE DOCUMENTATION.** ........................................................ 13

**IV.**    **WISNER POINTS TO NO EVIDENCE SHOWING IT PROPERLY INVOICED BPXP FOR REIMBURSEMENT.** ........................................................... 13

**V.**    **WISNER CONCEDES THAT IT RELEASED ITS PRIOR DEBRIS CLAIM AND DOES NOT CREATE A MATERIAL FACT ISSUE REGARDING ANY ALLEGED ADDITIONAL REMAINING DEBRIS.** ....................................... 15

**CONCLUSION** ............................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Travelers Indem. Co. of Connecticut*,
 465 F.3d 156 (5th Cir. 2006) ............................................................................ 2

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986) .......................................................................................... 7

*Bellard v. Gautreaux*,
 675 F.3d 454 (5th Cir. 2012) ............................................................................ 6

*Boudreaux v. Flagstar Bank FSB*,
 No. 15-30424, 2015 WL 7434322, at *2 (5th Cir. Nov. 23, 2015) ................... 13

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986) .......................................................................................... 1

*Copeland v. Wasserstein, Perella & Co.*,
 278 F.3d 472 (5th Cir. 2002) ............................................................................ 10

*Cruz v. Aramark Servs., Inc.*,
 213 F. App'x 329 (5th Cir. 2007) .................................................................. 6, 15

*E.B. Ludwig Steel Corp. v. C.J. Waddell Contractors, Inc.*,
 534 So. 2d 1364 (La. Ct. App. 1988) ............................................................... 5

*Frees & Laine v. C.W. Vollmer & Co.*,
 78 So. 2d 187 (La. Ct. App. 1955) ................................................................... 8

*Gooden v. Regions Bank*,
 CIV.A. No. 10-299-BAJ-SCR, 2012 WL 274787, at *1 (M.D. La. Jan. 31, 2012) .... 2, 9, 11, 13

*Hill v. City of Seven Points*,
 31 F. App'x 835, *4 (5th Cir. 2002) .............................................................. 6, 13

*In re Favre*,
 342 F. App'x 5, 8 (5th Cir. 2009) ..................................................................... 6

*Jeffery v. United States*,
 No. Civ. A. SA02CA0161-XR, 2004 WL 390810, at *4 (W.D. Tex. Jan. 8, 2004) ................ 10

*John Keenan Co., Inc. v. Norrell Corp.*,
 No. 99-1924, 2001 WL 958911, at *2 (E.D. La. Aug. 20, 2001) ........................... 13

*King v. Dogan*,
   31 F.3d 344 (5th Cir. 1994) ................................................................................ 6, 15

*Little v. Liquid Air Corp.*,
   37 F.3d 1069 (5th Cir. 1994) ...................................................................................... 2

*Miller v. Slam Offshore*,
   No. CIV. A. 96-1390, 1999 WL 804119, at *1 (E.D. La. Oct. 5, 1999) ................................. 2, 9

*Nabor v. St. John Par. Corr. Ctr.*,
   CIV.A. No. 11-497, 2011 WL 4368816, at *3 (E.D. La. July 26, 2011) ..................................... 4

*Provident Life & Accident Ins. Co. v. Goel*,
   274 F.3d 984 (5th Cir. 2001) ........................................................................... 4, 5, 10

*Roehrs v. Conesys, Inc.*,
   332 F. App'x. 184 (5th Cir. 2009) ................................................................................ 5

*S.W.S. Erectors v. Infax, Inc.*,
   72 F.3d 489 (5th Cir. 1996) ..................................................................................... 10

*Saunders v. Michelin Tire Corp.*,
   942 F.2d 299 (5th Cir. 1991) ...................................................................................... 1

*Skotak v. Tenneco Resins, Inc.*,
   953 F.2d 909 (5th Cir. 1992) ...................................................................................... 6

*Spencer v. Luckenbach Gulf S. S. Co., Inc.*,
   2 So. 2d 53 (La. 1941) ............................................................................................ 5

*Vector Elec. & Controls, Inc. v. JE Merit Constructors, Inc.*,
   No. 2005-CA-2244, 2006 WL 3208462, at *1 (La. Ct. App. Nov. 8, 2006) ............................ 15

**Statutes**

La. Civ. Code Art. 2024 ............................................................................................ 3

iv

## INTRODUCTION

Edward Wisner Donation ("Wisner") has now conceded that BP Exploration & Production Inc.'s ("BPXP") termination of the Access Agreement was not a breach (Opp.  (Rec. Doc. 139) at 6) and that Wisner released its prior debris claim.  (Pl. Resp. to Statement of Facts (Rec. Doc. 139-18) ¶ 17.)  Wisner has failed to respond to, and therefore also conceded, that no provision of the Access Agreement required BPXP to enable Wisner to assess its property (Compl. ¶ 35d) and that Wisner is not entitled to direct BPXP's cleanup operations (*id.* ¶¶ 35e, f, g).

With respect to the remaining counts, summary judgment is appropriate because Wisner has ***admitted*** each of BPXP's Statements of Material Fact either expressly or as a result of Wisner's failure to controvert the statements.  Wisner's failures include (i) "contesting" facts without citing a single factual citation to support its alleged dispute (*see* Pl. Resp. to Statement of Facts ¶¶ 2, 6, 8, 9, 17, 18, 22, 29, 30, 32); (ii) "contesting" facts while only citing to unsworn expert reports in their entirety (*see id.* ¶¶ 10-11); and (iii) "contesting" facts while only citing to Wisner's own summary judgment brief or opposition brief in their entireties (*see id.*  ¶¶ 13, 31, 33).  All of BPXP's statements should be deemed admitted for purposes of BPXP's Motion for Summary Judgment.  As there is no genuine issue of material fact as to the counts BPXP has moved on, BPXP's motion should be granted in its entirety.

## LEGAL STANDARD

When the opposing party bears the burden of proof at trial, the moving party need only point out the absence of evidence supporting an essential element of the opposing party's case.  *Saunders v. Michelin Tire Corp.*, 942 F.2d 299, 301 (5th Cir. 1991).  After the moving party meets this initial burden, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co. of Connecticut*, 465 F.3d 156, 164 (5th Cir. 2006). Conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence do not satisfy the burden of opposing summary judgment. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Thus, when a party "provides only conclusory argument and cites no evidentiary basis upon which plaintiff might controvert defendant's statement of undisputed facts," those statements should be "deemed admitted for purposes of [the summary judgment] motion." *Gooden v. Regions Bank*, CIV.A. No. 10-299-BAJ-SCR, 2012 WL 274787, at *1 (M.D. La. Jan. 31, 2012).[1]

## ARGUMENT

### I.    BPXP IS ENTITLED TO SUMMARY JUDGMENT ON WISNER'S BREACH OF CONTRACT CLAIMS THAT ARE UNSUPPORTED BY THE PLAIN TERMS OF THE ACCESS AGREEMENT.

Wisner attempts to manufacture contractual obligations by asserting breach of contract based upon: (i) BPXP's cancellation of the Access Agreement; (ii) failure to assess oil damage; (iii) interference with Wisner's assessments; and (iv) refusal to follow Wisner's assessment plans. (BPXP Mem. in Supp. of Partial Summ. J. (Rec. Doc. 134-33) ("Mem.") at 4-9.) The Court has already ruled that the Access Agreement's clear and unambiguous language does not support these alleged breaches, and Wisner's opposition fails to explain how these claims can survive summary judgment. In fact, in some instances, Wisner explicitly concedes that summary judgment is appropriate.

---

[1]  *See also Miller v. Slam Offshore*, No. CIV. A. 96-1390, 1999 WL 804119, at *1 (E.D. La. Oct. 5, 1999) ("Plaintiff's conclusory denials of [defendant]'s Statement of Undisputed Facts are insufficient to withstand summary judgment.").

**A.    Wisner Concedes That BPXP's Termination Of The Access Agreement Was Not A Breach.  (Compl. ¶ 35a)**

BPXP's termination of the Access Agreement was not a breach because, as the Court has held, "[a] contract of unspecified duration may be terminated at the will of either party by giving notice, reasonable in time and form, to the other party."  La. Civ. Code Art. 2024.  Wisner now admits that "this Court has held that BP could terminate the Access Agreement at will, such that its termination alone does not qualify as a breach."  (Opp. at 6.)  Thus, Wisner may not rely upon the termination in and of itself as a basis to seek damages.

**B.    Wisner Concedes That The Access Agreement Did Not Require BPXP To Assess Oil And Presents No Evidence That BPXP Failed To Pay Reasonable Costs Associated With Assessment Of Cleanup Operations.  (Compl. ¶ 35b)**

The Court has held that the Access Agreement did not require BPXP to assess oil.  (Rec. Doc. 17 at 18.)  Nevertheless, Wisner contends that "cleanup operations are directly tied to the extensiveness of the oiling" and that cleanup required "long term analyses and studies" that BPXP is required to pay for.  (Opp. at 7-8.)

As Wisner has tried to do through the entirety of this litigation, it again attempts to expand BPXP's obligations under the Access Agreement.  The Access Agreement does ***not*** require that BPXP conduct any assessment, and it does ***not*** require that BPXP pay for any and all assessments.  Nor does the Access Agreement require BPXP to conduct "long term analyses and studies" concerning the assessment of oiling damages.  BPXP need only pay for "reasonable costs and expenses associated with [assessing] damage to Wisner property" after properly invoiced by Wisner.  (Rec. Doc. 1-1, Access Agmt. ¶ 9.)

Wisner does not articulate what specific "reasonable costs" it contends BPXP failed to pay.  Indeed, in the two pages it spends on this issue in its opposition, Wisner makes no citations to the record other than to cite to the unsworn expert report of John Pardue, which does not

address purportedly unreimbursed costs and, regardless, is improper under Louisiana law.[2]  (*See* Opp. at 6-7.)  Wisner was required to properly invoice BPXP for any reasonable costs for which it sought reimbursement.  (*See* Mem. at 21.)  Wisner's opposition points to no evidence that it ever invoiced BPXP for the unspecified "assessment" damages it now seeks.

### C.   Wisner Concedes That It Was Not Entitled To Direct BPXP's Cleanup Operations.  (Compl. ¶ 35e, f, g)

Wisner claims *it believes* that cleanup required "long term analyses and studies" that BPXP should have paid for.  (Opp. at 7-8.)  But Wisner does not (and cannot) dispute that it had no contractual right to direct BPXP's assessment and remediation.  (*See* Mem. at 9; Rec. Doc. 17 at 16 ("It does <u>not</u> direct BP[XP] to implement any overall remediation scheme proposed by Wisner.").)  Nothing in Wisner's opposition supports the contention that BPXP's alleged refusal to adopt Wisner's "proposed assessment and remediation plans" (Compl. ¶ 35e), and to "assess and remediate" in accordance with "the Wisner Science Team's" plans (*id.* ¶¶ 35f-g), breached the Access Agreement.  These alleged breaches are outside the bounds of the Access Agreement, and thus BPXP is entitled to summary judgment.

### D.   Wisner Concedes That No Provision Of The Access Agreement Required BPXP To Enable Wisner To Assess Its Property.  (Compl. ¶ 35d)

The Access Agreement did not require BPXP to enable or facilitate Wisner's own assessments of its property.  (Mem. at 8.)  Accordingly, the "breach" alleged in Wisner's complaint—that BPXP "interfered" with Wisner's own cleanup efforts—fails and should be dismissed.  Faced with this reality, Wisner offers no response in its opposition, thus conceding the point.[3]

---

[2]   Wisner's unsworn expert reports are not proper summary judgment evidence and should not be considered by this Court.  *See infra*, Part II; *Provident Life & Accident Ins. Co. v. Goel,* 274 F.3d 984, 1000 (5th Cir. 2001).

[3]   *See Nabor v. St. John Par. Corr. Ctr.,* CIV.A. No. 11-497, 2011 WL 4368816, at *3 (E.D. La. July 26, 2011) *report and recommendation adopted*, CIV.A. No. 11-497, 2011 WL 4368832 (E.D. La. Sept. 19, 2011) ("To

## II.    BPXP IS ENTITLED TO SUMMARY JUDGMENT ON WISNER'S "HIGHEST INDUSTRY STANDARDS" CLAIMS.

Regardless of how Wisner defines the "highest industry standards" provision of the Access Agreement, it has not established that it incurred damages as a result of this alleged breach.  Attempting to avoid the absence of evidentiary support, Wisner claims that "BP's motion is nothing more than a 'battle of the experts.'"  (Opp. at 12.)  But Wisner cannot create a fact dispute by citing to its unsworn expert reports.  *Provident Life & Accident Ins. Co.*, 274 F.3d at 1000 ("Unsworn expert reports ... do not qualify as affidavits or otherwise admissible evidence for [the] purpose of Rule 56, and may be disregarded by the court when ruling on a motion for summary judgment.") (internal citations omitted).

### A.    Wisner Fails To Save Its Erosion Claim.

#### 1.    Wisner Provides No Evidence That Cleanup Operations Caused Erosion.

Wisner attempts to rehabilitate its erosion claim by asserting that Jeff Williams' and John Pardue's expert reports create a genuine dispute of material fact.  (Opp. at 10-11, 14.)  Wisner cannot survive summary judgment by relying on unsworn expert reports.  *Provident Life & Accident Ins. Co.*, 274 F.3d at 1000.  Furthermore, Williams admitted at his deposition that the increase in erosion was only "a potential increase," and that he does not know if the alleged increase is happening or *whether it will ever happen*.  (BPXP Ex. 19, J. Williams Dep. at 84-85.)  Wisner's alleged erosion damages do not rise past the level of speculation and conjecture, and Wisner is not entitled to compensation for remote and uncertain damages.  *See Spencer v. Luckenbach Gulf S. S. Co., Inc.*, 2 So. 2d 53, 56 (La. 1941).[4]

---

withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must cite to particular evidence in the record to support the essential elements of its claim.").

[4]    *See also Roehrs v. Conesys, Inc.*, 332 F. App'x. 184, 188 (5th Cir. 2009); *E.B. Ludwig Steel Corp. v. C.J. Waddell Contractors, Inc.*, 534 So. 2d 1364, 1371 (La. Ct. App. 1988) ("[T]he burden of proving the extent of

2.     The Undisputed Facts Show BPXP Did Not Delay the CAM Project.

"[O]n a motion for summary judgment, the evidence proffered by the plaintiff to satisfy his burden of proof must be competent and admissible at trial." *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).   "Unauthenticated documents are improper as summary judgment evidence." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994).[5]

First, Wisner's opposition has no response to BPXP's evidence that cleanup operations did not delay the CAM Project.  (Statement of Facts (Rec. Doc. 134-34) ¶ 31.)  Wisner does not address the affidavits of Coastal Protection and Restoration Authority ("CPRA") and Weeks Marine—the two entities that implemented the CAM Project—that BPXP attached to its motion (*see* BPXP Exs. 25 and 27).   Both affidavits confirm that BPXP's cleanup operations did not delay the CAM Project.  (*Id.*)  This is not a fact in dispute, and BPXP is thus entitled to summary judgment on this issue.

Second, Wisner's alleged "evidence" does not save its claim.  In its response to BPXP's Statement of Facts, Wisner "contest[s]" BPXP's evidence, but cites only to its own opposition brief.  (Pl. Resp. to Statement of Facts ¶ 31.)   Wisner cannot rely on a citation to its own opposition brief to survive summary judgment.   "[S]tatements in a response in opposition to summary judgment do not constitute 'evidence' for summary judgment purposes." *Hill v. City of Seven Points*, 31 F. App'x 835, *4 (5th Cir. 2002) (granting summary judgment where party cited to response brief, as her response was not "summary judgment evidence") (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 (5th Cir. 1992)).  Therefore, the Court should deem that Wisner has "admitted" that BPXP did not delay the CAM Project.

---

his damages falls upon the one who seeks them. . . [O]nly actual, not speculative or conjectural damages may be recovered.").

[5]     *See also In re Favre*, 342 F. App'x 5, 8 (5th Cir. 2009); *Cruz v. Aramark Servs., Inc.*, 213 F. App'x 329, 332-33 (5th Cir. 2007).

Further, in its brief, Wisner offers inadmissible hearsay and evidence relating to the relationship between the CAM Project and the oil spill itself—not the cleanup operations at issue in this case—in an attempt to manufacture a fact dispute where there is none. (*See* Opp. at 11–12, 17–18.) Wisner cites inadmissible hearsay with its reference to the unsworn Williams' report, which is insufficient to survive summary judgment. And in Williams' deposition, he *admitted* he had no personal knowledge on this matter, but rather was relying on documents and the third-party hearsay statements of Michael Poff related to the oil spill, not cleanup operations. (BPXP Ex. 19, J. Williams Dep. at 248-49.) Similarly, Wisner's reliance on Cathy Norman is insufficient because she likewise admitted at her deposition that her speculation regarding delay is based entirely on third-party hearsay. (Opp. at 11-12 (citing Wisner Ex. 7).) Finally, other documents cited by Wisner are based on hearsay, lack foundation, and/or do not discuss the CAM delay, and thus do not create a genuine issue of material fact.[6] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The remaining evidence cited by Wisner fails to create a genuine fact issue because it does not suggest that *response operations* caused delay, but rather speculates that the ***oil spill itself*** was the cause of the delay.[7]

Simply put, those responsible for the CAM Project have stated unequivocally that there was no delay caused by cleanup operations. Wisner fails to provide contrary evidence. BPXP is entitled to summary judgment on the issue.

---

[6]   See Wisner Ex. 12 (purported evidence of delay based on inadmissible hearsay); Wisner Ex. 13 (no discussion of the CAM delay; statements by Cathy Norman regarding completing the response before the CAM Project began); Wisner Ex. 14 & 15 (no discussion of any CAM delay; discussions regarding CAM progress).

[7]   (*See* Wisner Exs. 5 & 6, 2010-2011 Wisner Annual Reps. at 5 ("This was delayed by the BP Oil Spill"); Wisner Ex. 1, Williams Rep. at 35 ("Mr. Poff stated that in-fact the BP spill did delay start of CAM.").)

3.      Wisner Cannot Demonstrate an Enforceable Right to the CAM Project.

Even if Wisner would have been able to create a genuine issue in regard to the purported delay of the CAM Project, Wisner has not shown that it is entitled to legally cognizable damages resulting from any delay.  Wisner argues that BPXP is liable for all "foreseeable" damages without limitation.  Wisner is wrong.  Wisner must show that it had an enforceable right with the State to the CAM Project in the first place. *See, e.g.*, *Frees & Laine v. C.W. Vollmer & Co.*, 78 So. 2d 187 (La. Ct. App. 1955).  Wisner cannot establish such a right as it admits it had no contract with the State for the CAM Project.  (Pl. Resp. to Statement of Facts ¶ 25.)

4.      Wisner Concedes that the Access Agreement Did Not Require BPXP to Remediate Oil According to Any Agreed Timeframe.

Wisner fails to identify what provision of the Access Agreement could possibly have been breached by any alleged CAM delay.  (Opp. at 16–17.)  Specifically, Wisner appears to rely on the argument that it is entitled to damages for a "delay in *performance*."  (S*ee id.* at 17.) Wisner is once again attempting to impose obligations on BPXP that are not within the Access Agreement.  The pace of BPXP's response activities could never breach the Access Agreement because that agreement did not require BPXP to conduct any particular response activities in the first place, let alone within a certain timeframe.  (*See* Rec. Doc. 17 at 1.)

**B.      Wisner Has No Recoverable Damage Related To The Removal of Oiled Sand.**

Wisner argues that BPXP must restore "damages" caused by cleanup operations by "replac[ing] more than 35 million pounds of oiled material," which Wisner contends translates to 15,697 cubic yards of sand.  (Opp. at 3-4; BPXP Ex. 15, J. Pardue Dep. at 20-22.)  Wisner again seeks to expand BPXP's contractual obligations.  The removal of oiled materials from the property—including oiled sand and oiled sediment—is not a damage to the property.  Wisner

wanted oiled materials removed from its property, and concedes that "severe damage may have resulted had cleanup operations not been conducted."  (Opp. at 5.)

"[E]ven if Wisner could recover damages for the removal of oiled sand . . . not replaced, the amount of sand removed has already been replaced many times over."  (Mem. at 15-16.)  In its opposition, Wisner provides no factual support for its claims that BPXP has "failed to replace" the removed sand.  (Opp. at 4.)  Wisner admits that operations backfilled Breach 2 with sand.  (*See* Pl. Resp. to Statement of Facts ¶ 23.)  While Wisner "contests" the amount of sand added to Wisner land through the HESCO Baskets, it provides not a single citation in support.[8]

Wisner's claim that *BPXP*'s statement of fact is unsubstantiated is both ironic and bewildering; BPXP cites both to the HESCO Basket Removal Plan detailing the amount of sand, and to Gary Hayward's testimony discussing and authenticating the same.  (Statement of Facts ¶¶ 8, 21.)  In stark contrast, Wisner provides no citations creating a factual dispute as to the amount of sand contained in and left by the HESCO Baskets.  As Wisner "provides only conclusory argument and cites no evidentiary basis upon which plaintiff might controvert defendant's statement of undisputed facts," BPXP's statements regarding the quantity of sand left should be "deemed admitted for purposes of the present motion."  *Gooden*, 2012 WL 274787, at *1; *see also Miller*, 1999 WL 804119, at *1 ("Plaintiff's conclusory denials of [defendant]'s Statement of Undisputed Facts are insufficient to withstand summary judgment.").

Additionally, CAM I has placed more than 3.62 million cubic yards of sand on Wisner's beach, and CAM II will place even more sand on the beach.  (*See* Statement of Facts ¶¶ 28, 30.)[9]

---

[8]  *See* Pl. Resp. to Statement of Facts ¶ 8 ("The amount of sand is contested in that it is not substantiated."); ¶ 21 ("Uncontested except as to the quantity of sand which is unsubstantiated.").

[9]  Wisner admits in response that the "amount of sand [cited for CAM I] is generally correct, although no trueing has ever been performed."  (Pl. Resp. to Statement of Facts ¶ 30.)  Wisner provides no support for its claim that trueing has never been done; BPXP's statement should be deemed admitted.

Thus, even if Wisner's calculations were correct and 15,697 cubic yards of sand were removed during the response, over 200 times the amount of sand allegedly removed has been replaced, and Wisner thus has no damages related to the alleged 15,697 cubic yards of sand removed.

### C.   Wisner's Claimed Marsh Platform Damages Cannot Survive Summary Judgment.

Wisner's opposition relies solely on its expert reports to attempt to create an issue of fact as to whether BPXP damaged the marsh platform.  (Opp. at 11, 14.)  But Williams' report and Pardue's unsworn "observations made as a fact witness" in his report (Opp. at 14) are inadmissible and cannot defeat summary judgment.  *Provident Life & Accident Ins. Co.*, 274 F.3d at 1000.

As discussed in BPXP's opening brief, Dr. Pardue admitted in his deposition that he had no personal knowledge as to how any of the alleged damage purportedly occurred, and that he did not personally observe any such damage.  (Mem. at 17.)  Even if Wisner had properly sworn Dr. Pardue's report under oath (which they have not), his prior statement contained in his expert report does not create an issue of fact in light of his contradictory deposition testimony.  *See Copeland v. Wasserstein, Perella & Co.*, 278 F.3d 472, 482 (5th Cir. 2002).[10]  Wisner has failed to present any admissible evidence creating a genuine issue of material fact as to alleged marsh platform damages.

---

[10]   *See also Jeffery v. United States*, No. Civ. A. SA02CA0161-XR, 2004 WL 390810, at *4 (W.D. Tex. Jan. 8, 2004) (granting summary judgment and finding no material fact issue where plaintiffs did not explain the change in testimony but rather attempted to simply rely on the expert report made prior to the expert's deposition); *S.W.S. Erectors v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996) ("[T]his court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony.")).

**D. Wisner Fails To Raise Genuine Issues Of Material Fact Concerning Liability For Hard Structures Or HESCO Baskets.**

    1. <u>BPXP Was Not Involved in the Installation of the Hard Structures or HESCO Baskets.</u>

Neither BPXP nor Unified Command had any involvement in the installation of the HESCO Baskets or the hard structures. Wisner admits that the National Guard constructed the HESCO Baskets. (Pl. Resp. to Statement of Facts ¶ 7.) While Wisner "contests" that BPXP had no part in installation of hard structures, Wisner yet again fails to provide a single citation to support its dispute. (*Id.* ¶ 6.)[11] Thus, BPXP's statements that it had no involvement in the installation of the HESCO Baskets or hard structures should be deemed admitted for purposes of the motion. *Gooden*, 2012 WL 274787, at *1.

Wisner does not dispute that the installation of both these structures occurred *before the execution of the Access Agreement*. Therefore, even if BPXP had been involved with the installation of these structures, the installation occurred before BPXP had any contractual obligations to Wisner. In its opposition, Wisner asserts, with no legal citation, that BPXP "is responsible under the [AA], OPA, and general maritime law, for the damage caused by hard the structures and HESCO baskets." (Opp. at 15.) Wisner's bald assertions, with no factual or legal support, do not create a genuine issue of material fact.[12]

---

[11] Wisner claims that "[i]t is undisputed that BP paid for the installation . . . of both the hard structures and the HESCO baskets," citing only the testimony of Gary Hayward. (Opp. at 15 (citing G. Hayward Dep. at 162).) Wisner misrepresents the very testimony it cites. Hayward testified only that BPXP paid for ***removing*** the hard structures while acting as an agent of the Parish. Hayward did not testify that BPXP paid for the ***installation*** of the hard structures and the citation contains no reference to the HESCO Baskets at all.

[12] Wisner again seeks to expand BPXP's contractual obligations. This litigation does not concern whether BPXP is liable to Wisner under the Oil Pollution Act or maritime law, but rather only whether BPXP is liable to Wisner for alleged breaches of the Access Agreement.

2.    <u>Wisner Presents No Evidence of Damages Due to Removal of the HESCO Baskets.</u>[13]

Wisner incorrectly states in its opposition that "there is no real dispute that [. . .] HESCO Baskets caused damage to Wisner."  (Opp. at 15.)  To the contrary, as BPXP's opening brief details, there is "no evidence of damages due to removal of the HESCO Baskets."  (Mem. at 19-20.)  Wisner now asserts that during removal of the HESCO Baskets, BPXP failed to remove oiled sand, and "dumped the oiled HESCO baskets onto the beach."  (Opp. at 16.)  In support, Wisner cites *solely* to the HESCO Basket Removal Plan and the depositions of Gary Hayward.  (*Id.*)  While the HESCO Basket Removal Plan does document baskets that became oiled after installation due to a weather event, it also included a plan (signed by Wisner) to remove the oiled sand and liners *before* leaving the remaining sand.  (Statement of Facts ¶ 18.)  Further, the deposition testimony of Gary Hayward does not support Wisner's claims.  (Opp. at 16 (citing "Hayward Deposition, at 174-76").)  Indeed, the pages Wisner attaches to its brief do not discuss HESCO Baskets at all, and provide no support for Wisner's claims that "BP dumped the oiled HESCO baskets onto the beach."  (Rec. Doc. 139-8 at 7-9 (discussing tilling and plowing on Wisner land).)

The undisputed evidence is that the "Louisiana Department of National Resources/Office of Coastal Management conducted a final inspection of the removal process . . . and determined that there were no impacts of adjacent marsh areas and that no further mitigation was required."  (Statement of Facts ¶ 22.)[14]  Wisner has not, and cannot, identify any damage caused by the removal of the HESCO Baskets, and thus cannot avoid summary judgment.

---

[13]   Wisner does not appear to be alleging any damages from removal of the hard structures.  (Opp. at 15-16.)  And Wisner admits that the permit for removal of hard structures was issued to Parish, listing BPXP only as the Parish's agent.  (See Pl. Resp. to Statement of Facts at ¶ 20.)

[14]   While Wisner "contests" this statement, Wisner provides no explanation or citations to support is dispute.  (Pl. Resp. to Statement of Facts ¶ 22.)  Because Wisner "provides only conclusory argument and cites no

## III.   THERE IS NO EVIDENCE OF DAMAGES STEMMING FROM ANY FAILURE TO PROVIDE DOCUMENTATION.

Wisner does not dispute that proof of damages is an essential element of a breach of contract claim.  *Boudreaux v. Flagstar Bank FSB*, No. 15-30424, 2015 WL 7434322, at *2 (5th Cir. Nov. 23, 2015).  Contrary to Wisner's corporate representative's admission that Wisner was not damaged by BPXP's alleged failure to provide documentation,[15] Wisner now claims it was damaged because it has been "unable to precisely quantify the amount of oiled material BP removed from its Property" in this litigation (Opp. at 19), and that the appropriate remedy is "recoupment of litigation expenses, costs, attorneys fees, expert costs, and any other costs incurred."  (Opp. at 19.)[16]  Wisner cannot create a fact issue by contradicting the sworn testimony of its own representative in its opposition brief.  *See Hill*, 31 F. App'x at *4.  And Wisner provides no legal support—and BPXP is aware of none—to support its claim that the alleged inability to quantify damages in a subsequent lawsuit is a recoverable "damage" for an alleged breach of contract.  (Opp. at 19-20.)  Summary judgment is therefore appropriate.[17]

## IV.   WISNER POINTS TO NO EVIDENCE SHOWING IT PROPERLY INVOICED BPXP FOR REIMBURSEMENT.

As BPXP set forth in its motion for summary judgment, Wisner claims that it is owed a total of $375,099.91, as set forth in a spreadsheet that Wisner produced in this lawsuit.[18]  When

---

evidentiary basis upon which plaintiff might controvert defendant's statement of undisputed facts," BPXP's statements should be "deemed admitted for purposes of the present motion."  *Gooden*, 2012 WL 274787, at *1.

[15]   *See*, A. Phillips 30(b)(6) Dep. at 129-151, attached as Ex. 2 to BPXP's Opp. to Wisner's Mot. (Rec. Doc. 140).

[16]   Wisner's vaguely "adopts and incorporates by reference the arguments, facts, and law" in its own motion for summary judgment.  (Opp. at 19.)  Wisner cannot create a fact issue by citing to its briefing rather than to admissible record evidence.  *Hill*, 31 F. App'x at *4.

[17]   *Boudreaux*, 2015 WL 7434322, at *2; *see also John Keenan Co., Inc. v. Norrell Corp.*, No. 99-1924, 2001 WL 958911, at *2 (E.D. La. Aug. 20, 2001).

[18]   *See* BPXP Ex. 6, A. Phillips 30(b)(6) Dep. at 34:19-37:8.

questioned about this spreadsheet, Wisner's corporate representative, Amanda Phillips, explained that Wisner had not billed BPXP for two line items at the bottom of the spreadsheet— "Outstanding, Paid" and "Budgeted, Unbilled"—which together comprise $232,724 of the $375,099.91 total.[19]

In its opposition brief, Wisner breaks the $232,724 into four categories, but provides no evidence that it properly invoiced BPXP for the work, and, in some instances, admits that the costs are outside the scope of this case or have not yet been incurred:

- **Sand Replenishment ($98,549):** Tellingly, Wisner cites to nothing when making statements in its brief that it did provide invoices to BPXP.  (Opp. at 21.)  BPXP cannot be in breach of the Access Agreement for not paying invoices it never received.

- **Oil Remediation ($58,875):** Wisner provides no record evidence that it invoiced BPXP for this amount allegedly relating to work performed by Dr. Pardue.  Wisner also admits that this part of its claim "squarely belongs in the OPA/gml case." (Opp. at 21.)

- **Debris Item ($71,300):** Wisner has not been invoiced or incurred charges for $29,997.58 of the $71,300 at issue, admitting that it has merely "budgeted the $28,821 for removal work that has not yet been billed and an additional $1,176.58 for the cost [of] additional magnetic testing runs."  (Opp. at 22.)  Wisner also provides no evidence that it has invoiced BPXP for the remainder of this work.  BPXP cannot be in breach of the Access Agreement for not paying invoices it never received.

- **Survey of Damage ($4000):** Wisner admits that it "has not yet received an invoice for this item" (Opp. at 22), and in turn fails to provide evidence that it billed BPXP for it.  Thus, BPXP cannot be in breach of the Access Agreement for not paying invoices it never received.

Because Wisner has never properly invoiced BPXP for these items, BPXP cannot be said to have breached the Access Agreement.[20]  As explained in BPXP's opening brief (Mem. at 21), BPXP

---

[19]   See *id.* at 34:19-35:4; 37:3-8.

[20]   Although Wisner provides no citations to support that it invoiced BPXP for any of these amounts, Wisner did just produce a set of documents to BPXP ***less than two weeks ago*** that contain invoices.  However, these are not invoices to BPXP, but rather appear to be invoices generated for Wisner.  Because BPXP just received these documents less than two weeks ago and because Wisner has not identified to BPXP what amounts—if any—it believes BPXP may be liable for under the Access Agreement (like it did for previous invoices it submitted to BPXP, *see* Ex. 1), BPXP cannot be in breach of the Access Agreement for not paying amounts listed on any of these purported invoices.

is not required to reimburse Wisner unless and until Wisner invoices BPXP. (Rec. Doc. 1-1, Access Agmt. ¶¶ 7, 9.)  Wisner's invoices were a condition precedent of BPXP's reimbursement obligation.  *See Vector Elec. & Controls, Inc. v. JE Merit Constructors, Inc.*, No. 2005-CA-2244, 2006 WL 3208462, at *1 (La. Ct. App. Nov. 8, 2006).  The Court should grant BPXP summary judgment on each of these line items in Wisner's reimbursement claim—a total of $232,724.

## V.   WISNER CONCEDES THAT IT RELEASED ITS PRIOR DEBRIS CLAIM AND DOES NOT CREATE A MATERIAL FACT ISSUE REGARDING ANY ALLEGED ADDITIONAL REMAINING DEBRIS.

Wisner has not shown that there is a genuine issue of material fact in regard to its debris claims.  BPXP paid Wisner to remove whatever debris remained from response operations and Forrest Travirca III conducted the removal.  (Statement of Facts ¶ 17.)  Wisner concedes that additional reimbursement for that debris is "not being sought in this case."  (Pl. Resp. to Statement of Facts ¶ 17.)  Wisner's only "evidence" of remaining debris is a summary allegedly created by Aric Gisclair detailing the results of a magnetometer survey.  (Opp. at 23.)  Wisner has failed to authenticate this document, and so it "cannot be used to defeat summary judgment." *Cruz, Inc.*, 213 F. App'x at 332-33; *King v. Dogan*, 31 F.3d at 346.  Furthermore, as Wisner has not properly invoiced BPXP for any alleged remaining debris, BPXP cannot be said to have breached the Access Agreement.  (*See supra* Section IV.)

## CONCLUSION

For these reasons and for the reasons set forth in BPXP's opening brief, BPXP respectfully requests the Court grant BPXP's Motion for Partial Summary Judgment in its entirety.

Dated: January 13, 2016                    Respectfully Submitted,


                                           /s/ Christopher J. Esbrook
                                           Christopher J. Esbrook
                                           Christina Briesacher
                                           KIRKLAND & ELLIS LLP
                                           300 North LaSalle Street
                                           Chicago, IL 60654
                                           Telephone: (312) 862-2000
                                           Facsimile: (312) 862-2200

                                           Greg L. Johnson (Bar #24477)
                                           LISKOW & LEWIS
                                           701 Poydras Street, Suite 5000
                                           New Orleans, LA 70139-5099
                                           Telephone: (504) 581-7979
                                           Facsimile: (504) 556-4108

                                           *Attorneys for BP Exploration & Production Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing to all counsel of record, and a copy will be furnished via e-mail to Wisner's counsel.

/s/ Christopher J. Esbrook