UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

EDWARD WISNER DONATION ET AL.          CIVIL ACTION

VERSUS                                 NO. 14-1525

BP EXPLORATION & PRODUCTION, INC.      MAGISTRATE JUDGE
                                       JOSEPH C. WILKINSON, JR.

## ORDER AND REASONS ON MOTIONS

Plaintiff, the Edward Wisner Donation ("Wisner"), is a juridical entity that owns coastal Louisiana land, including what is known as Fourchon Beach. Wisner's land allegedly was damaged by the Deepwater Horizon explosion and oil spill in the Gulf of Mexico on April 10, 2010. It was also used in the response and cleanup efforts undertaken after the disaster. Defendant, BP Exploration & Production, Inc. ("BP"), is the adjudicated principal wrongdoer responsible for both the disaster and the cleanup. See generally In re Oil Spill by Oil Rig Deepwater Horizon, 21 F. Supp. 3d 657 (E.D. La. 2014). On August 23, 2010, Wisner and BP entered an Access Agreement that granted BP access to Wisner's Fourchon Beach property "for the purpose of cleanup operations related to the [Deepwater Horizon] oil spill." Record Doc. No. 132-4, Plaintiff's Exh. 2, Access Agreement, ¶ 1. This breach of contract action arises from that agreement.

Both parties filed motions for partial summary judgment. Record Doc. Nos. 132 (plaintiff), 134 (defendant). Wisner seeks summary judgment on two issues: "(1) as a matter of clear interpretation of the contract, the Access Agreement may only be reasonably interpreted to require BP to restore the damage caused by its clean-up

operations; and (2) BP's failure to provide Wisner with waste manifests, critical reports, and oil testing" breached the contract.  Plaintiff's memorandum in support, Record Doc. No. 132-1 at p. 1.  BP seeks summary judgment on all of plaintiff's claims, except for a certain portion of plaintiff's expenses ($142,375.91) allegedly due under the contract, as to which BP admits there are disputed issues of fact for trial.  Record Doc. No. 134-33 at pp. 8-9.

Having considered the voluminous written submissions, the record, the oral arguments of counsel and the applicable law, IT IS ORDERED that plaintiff's motion for partial summary judgment is DENIED, and that defendant's motion for partial summary judgment is GRANTED IN LIMITED PART AND DENIED IN SUBSTANTIAL PART for the following reasons.

I.      APPLICABLE STANDARDS

(A)    Standards for Summary Judgment Motions

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

Rule 56, as revised effective December 1, 2010, establishes new procedures for

supporting factual positions:

> (1)  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> (2)  Objection That a Fact Is Not Supported by Admissible Evidence.  A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> (3)  Materials Not Cited.  The court need consider only the cited materials, but it may consider other materials in the record.
>
> (4)  Affidavits or Declarations.  An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c).

Thus, the moving party bears the initial burden of identifying those materials in

the record that it believes demonstrate the absence of a genuinely disputed material fact,

but it is not required to negate elements of the nonmoving party's case.  Capitol Indem.

Corp. v. United States, 452 F.3d 428, 430 (5th Cir. 2006) (citing Celotex Corp. v. Catrett,

477 U.S. 317, 323 (1986)).  "[A] party who does not have the trial burden of production

may rely on a showing that a party who does have the trial burden cannot produce

admissible evidence to carry its burden as to [a particular material] fact."  Advisory Committee Notes, at 261.

A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  No genuine dispute of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented.  Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 712 (5th Cir. 1994).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must cite to particular evidence in the record to support the essential elements of its claim.  Id. (citing Celotex, 477 U.S. at 321-23); accord U.S. ex rel. Patton v. Shaw Servs., L.L.C., 418 F. App'x 366, 371 (5th Cir. 2011).  "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial."  Celotex, 477 U.S. at 323; accord U.S. ex rel. Patton, 418 F. App'x at 371.

If the movant bears the burden of proof on an issue, either because the movant is the plaintiff or is a defendant asserting an affirmative defense, the movant must "'establish beyond peradventure all of the essential elements of the [claim or] defense'" to warrant judgment in its favor.  United States v. Renda Marine, Inc., 667 F.3d 651, 659 (5th Cir. 2012) (quoting Addicks Serv., Inc. v. GGP-Bridgeland, LP, 596 F.3d 286, 293 (5th Cir. 2010)).  "This means that [a moving plaintiff] must demonstrate that there are

4

no genuine and material fact disputes on any of the essential elements of each claim." Robax Corp. v. Prof'l Parks, Inc., No. 3:07-CV-1399-D, 2008 WL 3244150, at *2 (N.D. Tex. Aug. 8, 2008) (citing Martin v. Alamo Cmty. Coll. Dist., 353 F.3d 409, 412 (5th Cir. 2003); Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986)) (quotation omitted); accord Lloyd v. Lawrence, 472 F.2d 313, 318 (5th Cir. 1973).

"Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists." Edwards v. Your Credit, Inc., 148 F.3d 427, 432 (5th Cir. 1998); accord Murray v. Earle, 405 F.3d 278, 284 (5th Cir. 2005). "We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Badon v. R J R Nabisco Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quotation omitted) (emphasis in original). "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint."'" Nat'l Ass'n of Gov't Employees, 40 F.3d at 713 (quoting Anderson, 477 U.S. at 249).

"Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation

5

omitted) (emphasis in original); accord Duron v. Albertson's LLC, 560 F.3d 288, 291 (5th Cir. 2009).

(B)     Standards of Contract Interpretation

This breach of contract action is governed by Louisiana substantive law.  "The contract is the law between the parties.  When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.  Courts may not disregard a clear and explicit clause of a contract." Indus. Roofing & Sheet Metal Works, Inc. v. J.C. Dellinger Mem'l Trust, 751 So. 2d 928, 933 (La. App. 2d Cir. 1999) (citations omitted); accord Clovelly Oil Co. v. Midstates Petroleum Co., 112 So. 3d 187, 192 (La. 2013).

"In Louisiana the construction of an unambiguous contract is a question of law." Tubos de Acero de Mex., S.A. v. Am. Int'l Inv. Corp., 292 F.3d 471, 486 (5th Cir. 2002). "The meaning and intent of the parties to the written contract in such cases must be sought within the four corners of the instrument and cannot be explained or contradicted by parol evidence." First S. Farm Credit, ACA v. Gailliard Farms, Inc., 880 So. 2d 223, 225 (La. App. 2d Cir. 2004).  Louisiana's rules of contract construction

> "do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of [a] new contract when the terms express with sufficient clearness the parties' intent. The fact that one party may create a dispute about the meaning of a contractual provision does not render the provision ambiguous."

Chevron USA Inc. v. Santa Fe Snyder, 69 F. App'x 658, 2003 WL 21355979, at *2 (5th Cir. May 22, 2003) (quoting Campbell v. Melton, 817 So. 2d 69, 76 (La. 2002)).

"The words of a contract 'are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning.'" Guidry v. Am. Pub. Life Ins. Co., 512 F.3d 177, 181 (5th Cir. 2007) (citing La. Civ. Code art. 2047) (quoting Cadwallader v. Allstate Ins. Co., 848 So. 2d 577, 580 (La. 2003)); accord Clovelly Oil Co., 112 So. 3d at 192.

> "[A] contract must be viewed as a whole and, if possible, practical effect given to all its parts, according to each the sense that results from the entire agreement so as to avoid neutralizing or ignoring any of them or treating them as surplusage.  Some effect is to be given to every word or clause if possible[,] for a court may not impute to the parties the use of language without meaning and effect."

Franks Inv. Co., LLC v. Union Pac. R.R., 972 F. Supp. 2d 891, 897 (W.D. La. 2013) (citing La. Civ. Code art. 2050) (quoting Lambert v. Md. Cas. Co., 418 So. 2d 553, 559-60 (La. 1982)); accord Clovelly Oil Co., 112 So. 3d at 192.

(C)     Interpretation of the Contract as a Matter of Law

This court previously made several findings regarding the Access Agreement in denying Wisner's Motion for Preliminary Injunction.  In re Oil Spill by the Oil Rig Deepwater Horizon, No. MDL 2179, 2014 WL 4693068, at *8 (E.D. La. Sept. 22, 2014). Applying the rules of contract construction set forth above, the court now confirms and

reiterates the following findings for purposes of the pending motions for partial summary

judgment.

First, "the Access Agreement is clear and unambiguous."  Id.

> The provisions of the Access Agreement are clear.  The contract grants BP access to Wisner's property for BP's cleanup and response operations.  As accessories to that primary purpose, the contract obligates BP to protect the property from or pay for physical damages caused by defendant's use of its right of access.  It does not contain any language stating that Wisner can require BP to undertake certain cleanup operations. It does not say that BP is required to conduct oil removal operations to plaintiff's satisfaction and it does not contain any standards regarding such operations.  It does not direct BP to implement any overall remediation scheme proposed by Wisner.

Id.

Second, as to BP's obligations regarding property damages and restoration,

Paragraph 9 of the Access Agreement provides that

> Grantee [BP] shall be responsible for all reasonable costs and expenses associated with assessing damage to Wisner property caused by oil spill cleanup operations. Grantee shall be responsible for all reasonable costs and expenses associated with restoring said damage to said property. Examples of such damages include, but are not limited to, damage to vegetation by vehicles, damage to habitat from unattended or abandoned booms, or damage to marsh surface from equipment. Grantor [Wisner] will provide Grantee with a schedule of damaged resources as described herein and an invoice for the cost of restoration.  Payment for the cost of restoration will be due within 30 days of receipt of the invoice.   Nothing herein shall be construed to diminish Grantor's right to choose and control restoration activities upon its lands.  Nothing herein shall act as a waiver or release

8

of any obligation Grantee may owe Grantor <u>as a result of oil
released</u> from the Deepwater Horizon incident.

[Access Agreement] at ¶ 9 (emphasis added).

The Access Agreement, and paragraph 9 in particular, obligates BP
to pay for damages <u>caused by BP during its cleanup operations</u>, not
damages caused by oil washing ashore from the Deepwater Horizon
explosion and spill. This causation element is specific and clear. It is
consistent with the context of the contract as a whole, which governs BP's
right of access to the property and its responsibility for "restoring <u>said</u>
damage," <u>i.e.</u>, the damages referenced in the preceding sentence that are
caused by cleanup operations. The listed examples of "such damages"
confirm this interpretation. All the examples are damages that may be
caused by equipment used in the cleanup operation, not by the oil spill
itself.

The penultimate sentence in paragraph 9 that "[n]othing herein shall
be construed to diminish Grantor's right to choose and control restoration
activities upon its lands" merely confirms that the Access Agreement does
not interfere with plaintiff's rights as a property owner. In the context of
the entire contract, this sentence cannot be read to confer on Wisner any
right to direct BP in its oil removal operations.

The final sentence of paragraph 9 clarifies that the contract has no
effect on any obligations that BP may owe to Wisner regarding damages
incurred <u>as a result of the oil released</u>. The Access Agreement does not
cover any obligations to repair damages caused by the oil that might arise
from other legal sources, such as state tort laws, the Oil Pollution Act, the
Clean Water Act, the Outer Continental Shelf Lands Act and federal
maritime law. Such alleged obligations are the subject matter of other
lawsuits and claims by Wisner against BP in this multi-district litigation.

. . . . Paragraph 8 states that "[t]he highest industry standards shall
be used to insure environmentally sensitive practices <u>while carrying out
operations</u> on the Wisner Property. In addition, Grantee shall adhere to, at
a minimum, the following specific standards." <u>Id.</u> at ¶ 8 (emphasis added).
The phrase "highest industry standards" refers to the use of
environmentally sensitive practices while conducting <u>cleanup and response</u>
operations on the property, which is the subject and purpose of the Access
Agreement, and not to any standards to be used for the removal of oil. This
reading is confirmed by subparagraphs 8(a) and 8(b), which provide
minimum standards for [vehicle and heavy equipment use] and cleaning up
trash and tools . . . . The specific, stated goal of these standards is to

minimize damage to the property from the cleanup operations, not from the oil.  Paragraph 8 neither gives Wisner a contractual right to force BP to undertake oil removal nor establishes any standard for oil removal.

Id. at *9-10.

Finally, as to termination of the contract,

the Access Agreement contains no duration provision, rendering it terminable at will by either party. . . .  On May 22, 2014, BP notified Wisner that it would no longer need to access the property . . . .  BP also advised Wisner that it would continue to provide all information and reimbursements required under the Access Agreement as of the date of the letter, but that the contract was otherwise terminated.  This notice of termination could not be a breach of the contract.

Id. at *11.

II.   WISNER'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Wisner seeks summary judgment that "(1) as a matter of clear interpretation of the contract, the Access Agreement may only be reasonably interpreted to require BP to restore the damage caused by its clean-up operations; and (2) "BP's failure to provide Wisner with waste manifests, critical reports, and oil testing" breached the contract. Plaintiff's memorandum in support, Record Doc. No. 132-1 at p. 1.  Plaintiff asserts that the second alleged breach "results in the award of attorney's fees, expert expenses, and costs" under paragraph 11 of the contract.  Id. at pp. 2, 4-5.

As to the first issue, "Wisner interprets the Access Agreement to require BP to restore the property back to its previous condition before clean-up operations damaged it."  Id. at p. 2.  Applying the principles of contract interpretation set forth above, the

Access Agreement unambiguously makes BP "responsible for all reasonable costs and expenses associated with assessing damage to Wisner property <u>caused by oil spill cleanup operations</u>. [BP] shall be responsible for all reasonable costs and expenses associated with <u>restoring said damage</u> to said property." Record Doc. No. 132-4, Plaintiff's Exh. 2, Access Agreement at ¶ 9 (emphasis added). In its reply memorandum, Wisner concedes that BP is <u>not</u> responsible for restoring the entire property and is only responsible for restoring damage caused by cleanup operations. Nonetheless, it is unclear from Wisner's opposition papers whether its position is "that to 'restore' damage caused by cleanup operations means 'restoration' to <u>pre-spill conditions</u>," or whether plaintiff is arguing that BP misstates that this is Wisner's position. Record Doc. No. 145 at p. 2 (emphasis added).

Based on the unambiguous language of the Access Agreement, Wisner's motion on this issue is denied to the extent that plaintiff seeks to expand BP's contractual obligation to cover <u>all</u> restoration costs that Wisner may seek, as opposed to the "reasonable" costs; to restore the <u>property</u> to its "pre-damaged condition," as opposed to paying the reasonable costs to restore the <u>damage</u> proven to be caused by cleanup operations; and/or to give Wisner a contractual right to force BP to undertake oil removal, establish any standard for oil removal or implement any overall remediation scheme proposed by Wisner.

11

Wisner also seeks summary judgment that BP breached paragraph 6 of the Access Agreement by failing to provide Wisner with waste manifests, critical reports, and oil testing.  Plaintiff's motion regarding this issue is denied.  Material facts are in dispute, including but not limited to what categories of documents BP was required to provide; whether BP provided Wisner with all required reports; whether such production was timely; whether alternative documentation was either available, sufficient, accurate or produced; whether and to what extent, if any, Wisner suffered damages from BP's lack of production or untimely production; and what is plaintiff's remedy for any delayed or failed production.

Accordingly, plaintiff's motion for partial summary judgment is denied.

## IV.   BP'S MOTION FOR PARTIAL SUMMARY JUDGMENT

BP seeks summary judgment on all of plaintiff's claims, except for a certain portion of plaintiff's expenses ($142,375.91) for which Wisner submitted invoices to BP and as to which BP admits there are disputed issues of fact for trial.  Defendant requests that the court dismiss each of Wisner's claims that BP breached the contract by:

- Cancelling the Access Agreement (Compl. ¶ 35a);
- Failing to independently assess whether the property was fully remediated (id. at ¶ 35b);
- Failing to ensure that the assessment and remediation methods on the property were based on the "highest industry standards" (id. at ¶ 35c);
- Interfering with Wisner's ability to assess whether the property has been fully remediated and restored (id. at ¶ 35d);
- Denying reasonable and appropriate assessment and remediation plans (id. at ¶ 35e);

• Refusing to assess and remediate as outlined in Wisner's Science Team's Remedial Plan for Breach 1 (id. at ¶ 35f);

• Refusing to assess and remediate as outlined in Wisner's Science Team's Scientific Assessment and Remediation Plans (id. at ¶ 35g);

• Failing to provide all required documentation as required under the Access Agreement (id. at ¶ 35h); and

• Failing to remove debris and objects placed on the Wisner property (including iron anchors, T-posts, etc.) (id. at ¶ 35j).

Defendant's memorandum in support, Record Doc. No. 134-33 at p. 28.

(A)    Termination of the Access Agreement Was Not a Breach of Contract

As a matter of law,

the Access Agreement contains no duration provision, rendering it terminable at will by either party. "A contract of unspecified duration may be terminated at the will of either party by giving notice, reasonable in time and form, to the other party." La. Civ. Code art. 2024. On May 22, 2014, BP notified Wisner that it would no longer need to access the property because the Federal On-Scene Coordinator had "concluded that 'no further removal activities are appropriate on the property.'" Letter from Nathan Block, Senior Counsel for BP, to Wisner's attorney, Defendant's Exh. 5, Record Doc. No. 13201-5 [in MDL No. 2179], at p. 1. BP also advised Wisner that it would continue to provide all information and reimbursements required under the Access Agreement as of the date of the letter, but that the contract was otherwise terminated. This notice of termination could not be a breach of the contract.

In re Oil Spill, 2014 WL 4693068, at *11.

Although Wisner disagrees with the court's ruling that the contract was terminable at will by BP, plaintiff concedes for purposes of BP's partial summary judgment motion that the ruling stands and that BP's cancellation alone cannot be a breach of the contract. Record Doc. No. 139 at pp. 2, 6. Accordingly, IT IS ORDERED that defendant's motion

13

for summary judgment is granted in limited part as to plaintiff's claim that BP's cancellation of the Access Agreement breached the contract.  It did not.

(B)     Material Fact Issues Are in Dispute as to Wisner's Other Claims

Defendant's motion for partial summary judgment is denied in all other respects. Plaintiff's evidence is flimsy and subject to much question insofar as it concerns substantial portions of its claimed damages, particularly as to whether its damages were caused by breach of the Access Agreement as opposed to the explosion and oil spill itself.

Nevertheless, I cannot find on this record "a complete failure of proof" of the sort contemplated in Celotex that would support summary judgment.  477 U.S. at 323. Numerous material fact issues are in dispute regarding the remainder of plaintiff's claims, including but not limited to the following:  what damage to Wisner's property, if any, was caused by BP's oil spill cleanup operations, in breach of the Access Agreement, as opposed to the explosion and spill itself; whether removal of oiled sand constituted damage caused by cleanup operations; whether failure to replace removed sand constituted damage caused by cleanup operations; if so, whether BP failed to replace removed sand; whether removed sand was replaced by acceptable sand from other sources and whether such replacement mitigated BP's replacement obligation, if any; whether cleanup operations caused increased erosion and the extent of such erosion, if any; whether increased erosion is a foreseeable form of damage caused by cleanup

operations; whether cleanup operations caused delay in the Caminada Headlands project; if so, the extent of such delay and any damages suffered by Wisner as a result of the delay; whether delay in the Caminada Headlands project is a foreseeable type of damage caused by cleanup operations; whether cleanup operations caused damage to the relict clay platform; whether damage, if any, caused by hard structures constituted damage caused by cleanup operations; whether installation and/or removal of the HESCO baskets was part of BP's cleanup operations subject to the Access Agreement; whether damage, if any, caused by installation and/or removal of the HESCO baskets constituted damage caused by cleanup operations; whether BP used the highest industry standards to insure environmentally sensitive practices while carrying out cleanup operations on the Wisner property; whether BP's failure, if any, to use such standards caused damage to the property as a result of cleanup operations; what are the reasonable costs and expenses associated with assessing damage to Wisner's property caused by cleanup operations; what are the reasonable costs and expenses associated with restoring damage caused by cleanup operations to the property; whether BP provided Wisner with all documentation required under the contract; what categories of documents BP was required to provide; whether BP provided Wisner with all required reports; whether such production was timely; whether alternative documentation was either available, sufficient, accurate or produced; whether and to what extent, if any, Wisner suffered damages from BP's lack of production or untimely production; whether Wisner invoiced BP for all expenses for

which Wisner claims reimbursement under the contract; whether Wisner's failure, if any,

to submit timely invoices relieves BP of its obligations to pay for damages caused by

cleanup operations; whether the claimed expenses are reimbursable under the Access

Agreement; whether all debris and buried items from the cleanup response operations

have been removed; and whether Wisner released any part of its claim for removal of

debris asserted in this lawsuit.

## CONCLUSION

For the foregoing reasons, Wisner's motion for partial summary judgment, Record

Doc. No. 132, is DENIED, and BP's motion for partial summary judgment, Record Doc.

No. 134, is GRANTED IN LIMITED PART as to plaintiff's claim that BP's termination

of the Access Agreement was a breach of the contract.  That claim is DISMISSED WITH

PREJUDICE.  Defendant's motion is DENIED in all other respects.

New Orleans, Louisiana, this _____3rd_____ day of February, 2016.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE